**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 19-8717

WALTER HALL, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided October 18, 2021)

*Amy F. Odom and Alec Saxe*, both of Providence, Rhode Island, were on the brief for the appellant.

*William A. Hudson, Jr.,* Principal Deputy General Counsel; *Mary Ann Flynn*, Chief Counsel; *Christopher W. Wallace*, Deputy Chief Counsel; and *Clifton A. Prince,* all of Washington, D.C., were on the brief for the appellee.

Before TOTH, LAURER, and JAQUITH, *Judges*.

TOTH, *Judge*: Marine Corps veteran Walter H. Hall appeals a November 2019 Board of Veterans' Appeals decision that dismissed several service-connection claims for lack of jurisdiction. He argues that the Board erred when it disclaimed jurisdiction to hear his appeal because he submitted the wrong form. We agree: The particular form a claimant submits—correct or otherwise—has no bearing on the Board's jurisdiction to hear an appeal. Although VA can require a claimant to fill out a particular form and can dismiss nonconforming or untimely filings in appropriate circumstances, none of this affects the Board's jurisdiction to hear appeals of veterans benefits decisions. Only Congress (or the Constitution) can set the parameters for jurisdiction, so an agency can neither expand nor limit its own jurisdiction through regulation. And because there is no indication that Congress intended to limit the Board's jurisdiction to cases where veterans fill out the correct form, we reverse the Board's finding that it lacked jurisdiction and remand for further development.

## I. BACKGROUND

Mr. Hall served in the Marine Corps from 1999 until 2001. In January 2018, he sought service connection for ankle, foot, and hip conditions as secondary to a service-connected knee disability. A month later, VA's regional office (RO) denied his claims and sent him a letter stating that, if he disagreed with the decision, he must complete "a Notice of Disagreement, VA Form 21-0958, by March 1, 2019, one year from the date of this notice." R. at 710 (emphasis omitted). The RO enclosed a VA Form 21-0958 with the notification letter.

On February 19, 2019, the Veterans Appeals Improvement and Modernization Act of 2017 (VAIMA) went into effect, creating a new administrative appeal system for rating decisions issued on or after that date. Pub. L. No. 115-55, § 2(x), 131 Stat. 1105, 1115 (Aug. 23, 2017). Thus, VAIMA procedures apply only to claims that the RO addressed in a rating decision dated on or after February 19, 2019, while those adjudicated before that date are deemed "legacy" claims. Additionally, VA regulations require that veterans use a different Notice of Disagreement (NOD) form, VA Form 10182, when seeking Board review of decisions issued on or after that date. *See* 38 C.F.R. § 20.202 (a), (d) (2021).

On February 19, 2019—the *same day* the VAIMA went into effect—Mr. Hall submitted the VAIMA form (i.e., VA Form 10182) to appeal his February 2018 rating decision despite the fact that this rating decision remained under the domain of the legacy system. The RO never issued a Statement of the Case (SOC).

In April 2019, the Board informed Mr. Hall by letter that it had received his "Board Appeal request (VA Form 10182)" and placed his appeal on its "Evidence Submission docket." R at 281. However, in November 2019, the Board dismissed the veteran's claims after finding that he used the wrong form, VA Form 10182, in filing his NOD. The Board held that it did not have jurisdiction to hear the appeal and "the claims must be dismissed." R. at 8. This appeal followed.

## II. ANALYSIS

Mr. Hall asks the Court to reverse the Board's finding that it lacked jurisdiction over his appeal. He doesn't dispute that he filed the wrong form but argues that the requirement to use VA Form 21-0958 is not a jurisdictional hook and the Board waived that requirement when it accepted and processed his appeal. He also asks the Court to ensure that an SOC is issued regarding his foot, ankle, and hip conditions.

The Supreme Court has repeatedly emphasized the distinction between rules affecting jurisdiction and mandatory "claims-processing" provisions that govern the orderly processing of cases but otherwise do not create or withdraw jurisdiction. "Clarity would be facilitated if courts and litigants used the label 'jurisdictional' not for claims-processing rules, but only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority." *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004). The court expanded on this distinction in *Union Pacific R. Co. v. Brotherhood of Locomotive Engineers*, 558 U.S. 67, 81-82 (2009), explaining that

> Recognizing that the word "jurisdiction" has been used by courts, including this Court, to convey "many, too many, meanings," *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 90 (1998), we have cautioned, in recent decisions, against profligate use of the term. Not all mandatory "prescriptions, however emphatic, are properly typed jurisdictional," we explained in *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 510 (2006). Subject-matter jurisdiction properly comprehended, we emphasized, refers to a tribunal's "power to hear a case," a matter that "can never be forfeited or waived." *Id.*, at 514. In contrast, a "claim-processing rule, . . . even if unalterable on a party's application," does not reduce the adjudicatory domain of a tribunal and is ordinarily "forfeited if the party asserting the rule waits too long to raise the point." *Kontrick v. Ryan*, 540 U.S. 443, 456 (2004) (cleaned up).

Jurisdictional rules are "drastic" because they center on the authority of the entity adjudicating the claim—so the failure to comply with a jurisdictional rule requires dismissal because the adjudicatory body no longer has the legal authority to even consider the claim. *Henderson ex. rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011). For this reason, any ruling on the matter would be *ultra vires*—that is, illegal. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) ("'Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'" quoting *Ex parte McCardle*, 7 Wall. 506, 514, 19 L. Ed. 264 (1868)).

Unlike jurisdictional rules, however, claims-processing rules are less stringent as they do not affect a tribunal's "adjudicatory domain." *Union Pacific*, 558 U.S. at 81. So, even a mandatory rule that requires an adjudicator to dismiss a case "should not be deemed jurisdictional unless it governs a court's adjudicatory capacity, that is, its subject matter or personal jurisdiction." *Henderson*, 562 U.S. at 435. In contrast, because they do not affect subject matter jurisdiction,

3

claims-processing provisions generally are binding when properly asserted and not forfeited, and so they differ from jurisdictional rules, which are not subject to waiver or forfeiture and can be raised any time during a case or appeal. *See Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curiam).

"Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider." *Bowles v. Russell*, 551 U.S. 205, 212 (2007). Jurisdiction is a two-way street, however, and so an adjudicatory body can no more renounce jurisdiction over an issue Congress directed it to adjudicate than it can exercise jurisdiction when it is lacking. When Congress grants jurisdiction to an adjudicatory body, it has "a virtually unflagging obligation …. to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). For that reason, "there is surely a starting presumption that when jurisdiction is conferred, a court may not decline to exercise it. The general rule applicable to courts also holds for administrative agencies directed by Congress to adjudicate particular controversies." *Union Pacific*, 558 U.S. at 71 (internal citations omitted).

As relevant here, 38 U.S.C. § 511(a) provides a cause of action and establishes that "[t]he Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans." It is absolutely clear that Congress intended to grant to the Secretary "the power to declare the law" by adjudicating cases brought under section 511(a). *Steel*, 523 U.S. at 94. There's no dispute that Mr. Hall brings a claim for veterans benefits under section 511(a).

The Board's jurisdiction is derivative of the Secretary's. As with section 511(a), 38 U.S.C. § 7104(a), which sets out the Board's jurisdiction, uses the same mandatory *shall* in directing that "[a]ll questions in a matter which under section 511(a) of this title is subject to a decision by the Secretary shall be subject to one review on appeal to the Secretary." Taken together, sections 511 and 7104 offer no indication that Congress sought to eliminate VA's authority to adjudicate veterans benefits disputes—i.e., its subject matter jurisdiction—whenever a claimant's pleading fails to conform to form or timing requirements.

The final relevant statutory provision, 38 U.S.C. § 7105(a), does not discuss jurisdiction expressly. Titled "[f]iling of appeal," it establishes the process by which veterans initiate an appeal with the Board. To that end, it provides that appellate review "will be initiated by a notice of disagreement and completed by a substantive appeal after a statement of the case is furnished as

4

prescribed in this section." Subsection (d)(3) provides that "the claimant will be afforded a period of sixty days from the date the statement of the case is mailed to file the formal appeal. This may be extended for a reasonable period on request for good cause shown."

In *Percy v. Shinseki*, the Court noted that this timeliness provision regarding Substantive Appeals is not jurisdictional in nature and serves as a claims-processing mechanism. 23 Vet.App. 37, 43 (2009). In other words, the Board couldn't merely cite a lack of jurisdiction and summarily dismiss an appeal; it had to discuss why dismissal was appropriate under the relevant law. *Id*. And while *Percy* did not directly address the jurisdictional nature of other provisions in section 7105 concerning the filing of an NOD (as opposed to a Substantive Appeal), none of those provisions suggest that Congress intended to limit the Board's jurisdiction whenever a claimant uses the wrong form to file an NOD.

The Secretary points to regulations such as 38 C.F.R. §§ 20.202 and 20.203 governing the form of an appeal, but regulations are not jurisdictional in nature as only Congress may confer or withdraw jurisdiction. *Hamer v. Neighborhood Housing Servs. of Chicago*, 138 S. Ct. 13, 17 (2017). Instead, VA's regulations are akin to claims-processing rules insofar as they govern the processing of cases but do not implicate the agency's jurisdiction. So, the exercise of jurisdiction requires VA to engage in requisite fact finding and explain the basis for dismissing the claim under the appropriate laws. When the law precludes the type of relief a claimant seeks on procedural or substantive grounds, the "right course on appeal is to take jurisdiction over the case [and] explain why this is so." *Mata v. Lynch*, 576 U.S. 143, 149–50 (2015). *See also Steel*, 523 U.S. at 89 ("The absence of a valid (as opposed to arguable) cause of action does not implicate subject matter jurisdiction, i.e., the courts' statutory or constitutional *power* to adjudicate the case.").

In sum, the Board had jurisdiction here because Mr. Hall appeals the RO's denial of his claim for benefits and because nothing in section 7105 suggests that Congress intended to limit the Board's jurisdiction based on the specific form that the appellant used to file his NOD. Thus, the Board erred in dismissing Mr. Hall's case on jurisdictional grounds. R. at 6 ("[T]he claims . . . *must* be dismissed because the Board does not have jurisdiction over the issues." (emphasis added)). This error effectively prevented Mr. Hall from participating in the adjudicative process as the Board neither heard his appeal nor explained why any formal defect in the appeal merited dismissal under a claims-processing rationale. *See Simmons v. Wilkie*, 30 Vet.App. 267, 279 (2018), *aff'd*, 964 F.3d 1381 (Fed. Cir. 2020). The Court thus remands for the Board to either hear

Mr. Hall's appeal or to provide a rationale for declining to do so. If it dismisses his claim, the Board should identify the governing law, any formal defects in the appeal, whether waiver or forfeiture is a relevant consideration, and any other relevant factors.

One final note: the RO never issued an SOC after Mr. Hall filed his NOD. Thus, if the Board accepts Mr. Hall's legacy appeal, it has an obligation to ensure that the RO complies with its duty to issue an SOC regarding Mr. Hall's foot, ankle, and hip conditions. *See* 38 C.F.R. §§ 19.26 (2018), 19.29 (2018), 19.30 (2018) (stating that, once a claimant files an NOD, the RO must reexamine the claim and issue an SOC).

## III. CONCLUSION

For the foregoing reasons, the Court REVERSES the Board's finding that it lacks jurisdiction over Mr. Hall's claims, VACATES the November 4, 2019, Board decision, and REMANDS the matter for further adjudication consistent with this opinion.