# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 20-6853

EVERETT W. COOK, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued October 18, 2022                                    Decided May 17, 2023)

*Christopher F. Attig*, with whom *Alexandra Curran*, was on the brief, both of Little Rock, Arkansas, for the appellant.

*William Hornbeck*, with whom *Richard A. Sauber*, General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Dustin P. Elias*, Deputy Chief Counsel, all of Washington, D.C., were on the brief for the appellee.

Before PIETSCH, LAURER, and JAQUITH, *Judges*.

PIETSCH, *Judge*, filed the opinion of the Court. JAQUITH, *Judge*, filed a concurring opinion.

PIETSCH, *Judge*: In this timely appeal over which the Court has jurisdiction, *see* 38 U.S.C. §§ 7252(a), 7266(a), appellant Everett W. Cook challenges a June 3, 2020, Board of Veterans' Appeals (Board) decision that denied entitlement to an initial compensable disability rating for allergic rhinitis and entitlement to service connection for sinusitis, headaches, and diabetes mellitus type II. This appeal was referred to a panel of the Court because it involves issues of first impression concerning the interpretation of provisions of the Veterans Appeals Improvement and Modernization Act of 2017 (AMA),[1] 38 U.S.C. §§ 7113(c) and 7104(d)(2).

First, Mr. Cook argues that under subsection 7113(c)(2)(A), evidence submitted "with" the Notice of Disagreement (NOD) means all evidence associated with the VA claims file when the NOD is filed, and that the Board erred when it did not consider and address evidence he submitted

---

[1] Pub. L. No. 115-55, 131 Stat. 1105 (2017) (codified in various sections of title 38, U.S.C.). "The AMA applies to all claims for which notice of a decision is provided by the Secretary on or after February 19, 2019." *Aviles-Rivera v. McDonough*, 35 Vet.App. 268, 273 (2022).

between the date of the agency of original jurisdiction (AOJ) decision and the date of the NOD. The Secretary argues that subsections 7113(c)(1) and 7113(c)(2)(A) together preclude the Board's consideration of evidence submitted during the period between the AOJ decision and the NOD. We hold that under subsection 7113(c)(2)(A), evidence submitted "with" the NOD means evidence submitted at the same time as the NOD, and that subsections 7113(c)(1) and 7113(c)(2)(A) together exclude from the evidentiary record before the Board evidence submitted during the period between the time the AOJ decision is issued and the time the NOD is filed. The Board therefore did not err when it did not consider evidence submitted during the period between AOJ decision and the NOD.

Second, Mr. Cook argues that the Board's decision failed to provide a general statement required by subsection 7104(d)(2) because the Board failed to correctly identify the evidence it did not consider in making its decision. The parties urge the Court to use the reasons-or-bases standard of review traditionally applied to the Board's statement of reasons or bases to determine whether the Board's decision included a general statement that complied with subsection 7104(d)(2). We hold that Congress plainly intended that the Board's general statement be adequate. But, given that they are separate statutory requirements, what makes the Board's general statement adequate differs from what makes its statement of reasons or bases adequate. To be adequate, the Board's general statement must accurately inform the claimant whether the Board did not consider evidence because it was received during a time not permitted by section 7113 and what options may be available for having VA consider that evidence. Here, the Board did not consider evidence submitted during the period between the AOJ decision and the NOD, and the Board erred because it provided a misleadingly inaccurate general statement informing Mr. Cook that it did not consider only evidence received after the 90 days following the NOD. Further, the Board's inadequate general statement prejudiced Mr. Cook. Accordingly, we will set aside the Board's June 3, 2020, decision and remand this matter for further proceedings consistent with this decision.

## I. BACKGROUND

### A.

Before Congress enacted the AMA to reform the legacy VA appeals system, claimants were permitted "to submit new evidence at virtually any time prior to a final Board decision," often resulting in the Board remanding the appeal to AOJ for further development and readjudication.

*Military-Veterans Advocacy v. Sec'y of Veterans Affairs*, 7 F.4th 1110, 1118 (Fed. Cir. 2021). The "'continuous evidence gathering and readjudication of the same matters'" significantly contributed to claimants waiting years for a final Board decision. *Id.* at 1118-19 (quoting H. R. REP. NO. 115-135, at 29 (2017)).

In the AMA system, "claimants may now choose from three procedural lanes to obtain review of their claim within one year of the initial decision." *Id.* at 1119 (citing 38 U.S.C. § 5104C(a)(1)). One such lane is the filing of an NOD to appeal to the Board. 38 U.S.C. § 5104C(a)(1)(C). When a claimant files an NOD to the Board, he or she may choose from three Board dockets: "direct review," "additional evidence," or "hearing." 38 U.S.C. § 7105(b)(3); *Aviles-Rivera v. McDonough*, 35 Vet.App. 268, 273 (2022). These Board dockets impose various limitations on the evidence that the Board may consider. In two Board dockets, the Board is required to consider in the first instance evidence submitted within certain timeframes. 38 U.S.C. § 7113(b), (c); *see Military-Veterans Advocacy*, 7 F.4th at 1119. Relevant here, 38 U.S.C. § 7113(c) concerns the evidentiary record before the Board when a claimant elects the "additional evidence" docket. And Congress enacted a new requirement for the Board to include in its decision a general statement "reflecting whether evidence was not considered in making the decision because the evidence was received at a time when not permitted under [38 U.S.C. § 7113]" and the options that may be available for having VA consider that evidence. 38 U.S.C. § 7104(d)(2).

B.

Mr. Cook served on active duty in U.S. Air Force from December 1971 to December 1975. Record (R.) at 1585.

In March 2019, Mr. Cook filed through counsel a claim for service connection for chronic rhinitis, sinusitis, headaches, and diabetes mellitus type II (diabetes). R. at 489-95. In a June 2019 rating decision, the AOJ denied service connection for sinusitis, headaches, and diabetes, and the AOJ granted service connection for allergic rhinitis, assigning a 0% disability rating. R. at 249-63.

In July 2019, Mr. Cook submitted through counsel lay statements by him and his sister. R. at 1588-92. In September 2019, Mr. Cook submitted through counsel a private examination report by Dr. Michael Cesta, dated August 2019. R. at 211-26.

In October 2019, Mr. Cook filed through counsel an NOD, selecting the additional evidence docket. R. at 199-200. Mr. Cook did not resubmit the lay statements or Dr. Cesta's opinion.

3

In the June 2020 decision on appeal, the Board denied an initial compensable disability rating for allergic rhinitis and service connection for sinusitis, headaches, and diabetes. R. at 5-14. The Board stated:

> Evidence was added to the claims file during a period when new evidence was not allowed–after the 90 days following the election of the Evidence appeal lane. As the Board is deciding the claims herein, it may not consider this evidence in its decision. 38 C.F.R. § 20.300. The Veteran may file a Supplemental Claim and submit or identify this evidence. 38 C.F.R. § 3.2501. If the evidence is new and relevant, VA will issue another decision on the claim, considering the new evidence in addition to the evidence previously considered. *Id.*

R. at 6. And when denying service connection for sinusitis and headaches, the Board noted a VA examiner's negative opinion, and the Board stated that "[t]here are no competing medical opinions associated with the claims file during an applicable evidence period." R. at 8.

## II. 38 U.S.C. § 7113(c)(2)(A)

The first issue before us is whether 38 U.S.C. § 7113(c) requires the Board to consider all evidence associated with the VA claims file when the NOD is filed.[2]

### A. Parties' Arguments

Mr. Cook argues that subsection 7113(c)(2)(A) plainly and unambiguously provides that the Board must consider all evidence associated with the VA claims file when the NOD is filed. Appellant's (App.) Brief (Br.) at 11, 20. He argues that "with" could be read either as a preposition demonstrating accompaniment or a preposition demonstrating timing, and he asserts that "with" the NOD should be interpreted as a preposition demonstrating accompaniment. *Id.* at 16-17. He argues that any evidence in the VA claims file when the NOD is filed accompanies the NOD. *Id.*

---

[2] To be clear, 38 U.S.C. § 7113(c)(2)(B) is not at issue in this case. The only evidence at issue was submitted before the date the NOD was filed. To the extent Mr. Cook presents arguments concerning the meaning of subsection 7113(c)(2)(B), we will not address them because the Court is prohibited from "declar[ing] principles or rules of law which cannot affect the matter in the case before it." *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1337-38 (Fed. Cir. 2007) (quoting *Oil, Chem. & Atomic Workers Int'l Union v. Missouri*, 361 U.S. 363, 367 (1960)).

We note that Mr. Cook initially argued that subsections 7113(c)(2)(A) and 7113(c)(2)(B) together require the Board to consider any evidence in the claims file "on or before the 90th day following receipt of the [NOD]." Appellant's Brief at 18. But at oral argument, Mr. Cook's counsel withdrew and therefore abandoned this argument. *See* Oral Argument (O.A.) at 22:00-23:00, *Cook v. McDonough*, U.S. Vet. App. No. 20-6853 (oral argument held Oct. 18, 2022), https://www.youtube.com/watch?v=8vzXGOUBDy0; *Pederson v. McDonald*, 27 Vet.App. 276, 283-84 (2015) (en banc).

at 18. Mr. Cook argues that the Board therefore should have considered and addressed Dr. Cesta's medical opinion submitted in September 2019. *Id.* at 12-13. He also argues that when rendering its credibility determination the Board should have addressed his July 2019 lay statement. *Id.* at 11.[3] And he argues that the purpose of the AMA as reflected in legislative history supports his interpretation of subsection 7113(c)(2)(A). *Id.* at 18-20.

In response, the Secretary argues that subsections 7113(c)(1) and 7113(c)(2)(A) together plainly and unambiguously preclude the Board from considering evidence submitted between the time the AOJ decision is issued and the time the NOD is filed; that "with" in subsection 7113(c)(2)(A) should be interpreted as a preposition demonstrating timing; and that evidence submitted "with" the NOD means evidence "along with the NOD," "as part of the NOD," or "attached to the NOD." Secretary's (Sec.) Br. at 8-10; Sec. Memorandum of Law (Memo) at 5-8, 15. And he argues that the purpose of the AMA as reflected in legislative history supports his interpretation. Sec. Memo at 16-18.

### B. Analysis

"The Court reviews statutory construction questions de novo." *Martinez v. Wilkie*, 31 Vet.App. 170, 175 (2019) (citing 38 U.S.C. § 7261(a)(1)); *see Lane v. Principi*, 339 F.3d 1331, 1339 (Fed. Cir. 2003) ("[I]nterpretation of a statute or regulation is a question of law."). We begin our statutory interpretation analysis with the text of the statute to determine whether the language is plain and unambiguous. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). In making this determination, we look to "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* at 341. If the statutory language is unambiguous and "the statutory scheme is coherent and consistent," then the Court's statutory inquiry ends, *id.* at 340, and "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress," *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 842-43 (1984).

Section 7113(c), title 38, U.S. Code, states:

(c) Cases with no request for a hearing and with a request for additional evidence.

---

[3] Mr. Cook does not acknowledge in his pleadings that his July 2019 lay statement was submitted during the period between the AOJ decision and the NOD.

(1) Except as provided in paragraph (2), for cases in which a hearing is not requested in the [NOD] but an opportunity to submit evidence is requested, the evidentiary record before the Board shall be limited to the evidence considered by the [AOJ] in the decision on appeal.

(2) The evidentiary record before the Board for cases described in paragraph (1) shall include each of the following, which the Board shall consider in the first instance:

> (A) Evidence submitted by the appellant and his or her representative, if any, with the [NOD].

> (B) Evidence submitted by the appellant and his or her representative, if any, within 90 days following receipt of the [NOD].

38 U.S.C. § 7113(c).

Mr. Cook urges us to interpret the language "[e]vidence submitted . . . with the [NOD]" in subsection 7113(c)(2)(A) as meaning all evidence in the VA claims file when the NOD is filed. We reject this interpretation. Congress did not define "with." "With" could mean "a function word to indicate combination, accompaniment, presence, or addition" or "a function word to indicate a close association in time." *With*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/with (last accessed Oct. 5, 2022); *Perrin v. United States*, 444 U.S. 37, 42 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."). And in context, neither definition supports Mr. Cook's interpretation of subsection 7113(c)(2)(A). *See Holloway v. United States*, 526 U.S. 1, 6 (1999) ("In interpreting the statute at issue, '[w]e consider not only the bare meaning' of the critical word or phrase 'but also its placement and purpose in the statutory scheme.'" (quoting *Bailey v. United States*, 516 U.S. 137, 145 (1995))).

Read together, subsections 7113(c)(1) and 7113(c)(2)(A) plainly provide two distinct evidentiary windows that do not overlap. The language "[e]xcept as provided in paragraph (2)," refers to exceptions to the general rule set out in paragraph (1) that "the evidentiary record before the Board shall be limited to the evidence considered by the [AOJ] in the decision on appeal." 38 U.S.C. § 7113(c)(1). Relevant here, the first exception is that the evidentiary record before the Board shall include "[e]vidence submitted by the appellant and his or her representative, if any, with the [NOD]." 38 U.S.C. § 7113(c)(2)(A). We reject Mr. Cook's interpretation because it would

make the exception under subsection 7113(c)(2)(A) consume the general rule under subsection 7113(c)(1), thereby rendering the exception superfluous. *See Roper v. Nicholson*, 20 Vet.App. 173, 178 (2006) (explaining that the VA statutory scheme "should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error." (citations omitted)). Rather than enact subsections 7113(c)(1) and 7113(c)(2)(A), Congress could have enacted one provision simply stating that "the evidentiary record before the Board shall include evidence submitted before and with the NOD." We reject Mr. Cook's interpretation because Congress chose not to adopt this obvious alternative language. *See Advocate Health Care Network v. Stapleton*, 137 S. Ct. 1652, 1659 (2017) ("When legislators did not adopt 'obvious alternative' language, 'the natural implication is that they did not intend' the alternative." (quoting *Lozano v. Montoya Alvarez*, 572 U.S. 1, 16 (2014))).

Further, each exception set out in section 7113 is tied to the timing of a certain event. *See* 38 U.S.C. §§ 7113(b) (exceptions for evidence submitted "at the Board hearing" and "within 90 days following the Board hearing"), 7113(c) (exceptions for evidence submitted "with the [NOD]" and "within 90 days following receipt of the [NOD]"). We therefore read the language "with the [NOD]" under subsection 7113(c)(2)(A) as connoting a timeframe tied to the filing of the NOD. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997) (favoring a statutory analysis that "accords more coherence" to statutory provisions); *see also Military-Veterans Advocacy*, 7 F.4th at 1119 ("[C]laimants must specify in the NOD their intention to add to the record and submit the additional evidence *within a certain time frame* (i.e., within 90 days of the NOD's filing or the Board hearing)." (emphasis added)). Congress's choice to include no language suggesting a timeframe beyond the timing of the NOD means that Congress did not intend for the Board to consider evidence submitted at a time different than the time the NOD is filed. The Court will not read into subsection 7113(c)(2)(A) any arbitrary period before or after the time the NOD is filed. *See Bates v. United States*, 522 U.S. 23, 29 (1997) ("[W]e ordinarily resist reading words or elements into a statute that do not appear on its face."). Instead, we interpret subsection 7113(c)(2)(A) as providing a narrow exception to the general rule set out in subsection 7113(c)(1). *See Comm'r v. Clark*, 489 U.S. 726, 739 (1989) ("In construing provisions . . . in which a general statement of policy is qualified by an exception, we usually read the exception narrowly in order to preserve the primary operation of the provision.").

7

Accordingly, we hold that subsection 7113(c)(2)(A) plainly requires the Board to consider evidence submitted at the same time as, or simultaneously with, the NOD.[4] It follows that subsections 7113(c)(1) and 7113(c)(2)(A) together plainly exclude from the evidentiary record before the Board evidence submitted during the period between the issuance of the AOJ decision and the filing of the NOD.

Mr. Cook urges the Court to adopt his interpretation of subsection 7113(c)(2)(A) because, as evidenced by the legislative history, the nature of the VA claims and appeals process is veteran-friendly, and the purpose of the AMA was to remove obstacles to the efficient processing of appeals. *See* App. Br. at 18-20; App. Memo at 12-14. But "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992). And Mr. Cook cites no legislative history that clearly expresses an intent contrary to the plain language of subsections 7113(c)(1) and 7113(c)(2)(A). *See Garcia v. United States*, 469 U.S. 70, 75 (1984)) ("[O]nly the most extraordinary showing of contrary intentions from [the legislative history] would justify a limitation on the 'plain meaning' of the statutory language.").

We note that Mr. Cook argued, for the first time at oral argument, that subsection 7104(d)(2) "opens the door to allow the Board to weigh as a matter of fact," based on the facts and circumstances of each case, whether evidence was filed "with" the NOD under subsection 7113(c)(2)(A). *See* O.A. at 06:35-07:05, 07:36-09:42, 16:00-:18, 17:29-:33. He asserted that legislative history reflects Congress's intent for section 7113 to provide flexible timeframes that the Board has the discretion to define, and for VA to develop robust policies to address evidence submitted "outside of the timeframes not contemplated by the specific words" of the statute. O.A. at 07:59-08:35, 13:01-:09 (relying on S. REP. NO. 115-126, at 13 (2017) ("The Committee intends and expects that VA will develop robust policies for addressing evidence submitted during timeframes not contemplated by the new appeals framework . . . .")).

---

[4] At oral argument, Mr. Cook asserted that evidence submitted "with" the NOD could mean evidence submitted on the same day as the NOD, and he proffered hypothetical scenarios in which VA could receive evidence before or after the NOD but still on the same day as the NOD. O.A. at 3:55-6:08. We leave open for another day the question whether evidence not attached to or part of the NOD, but still submitted on the same day as the NOD, constitutes evidence submitted at the same time as, or simultaneously with, the NOD under subsection 7113(c)(2)(A). In this case no evidence was submitted on the same day the NOD was filed, and the Court is prohibited from issuing advisory opinions. *See Teva Pharm. USA, Inc.*, 482 F.3d at 1337-38.

8

Though this Court "will generally decline to exercise its authority to address an issue not raised by an appellant in his or her opening brief," *Pederson*, 27 Vet.App. at 283, in this case it is useful for us to address Mr. Cook's late argument. Mr. Cook identifies nothing in subsection 7104(d)(2) that delegates to the Board the responsibility of defining the evidentiary windows in section 7113 or that gives the Board the discretion to determine whether a piece of evidence falls within any such evidentiary window. In section 7113, Congress used the term "shall," which commands that the evidentiary record before the Board is limited to evidence within the evidentiary windows prescribed by Congress. *See Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171 (2016) ("The word 'shall' usually connotes a requirement, unlike the word 'may,' which implies discretion."); *Escoe v. Zerbst*, 295 U.S. 490, 493 (1935) ("'[S]hall' . . . is the language of command."). Though the Senate committee report may suggest an intent to delegate to VA the responsibility of developing policies for "addressing" untimely evidence, *see* S. REP. NO. 115-126, at 13 (2017), "it is the statute, and not the Committee Report, which is the authoritative expression of the law." *Chi. v. EDF*, 511 U.S. 328, 337 (1994). Because the language of subsections 7113(c)(1) and 7113(c)(2)(A) is plain, we must enforce these provisions according to their terms. *See King v. Burwell*, 576 U.S. 473, 486 (2015).[5]

## C. Application to this Case

Initially, we note that the Secretary conceded at oral argument that subsection 7113(c) does not bar the Board's consideration of Mr. Cook's July 2019 lay statement, because the Secretary appears to believe, without explaining why, that this lay statement consisted of argument, not evidence. O.A. at 38:37-39:35. But the distinction between evidence and argument is not at issue in this case.[6] Mr. Cook argued that his July 2019 lay statement constitutes evidence that he was treated with over-the-counter medication for his headache and sinus symptoms, and that the Board should have addressed this lay evidence when determining whether his report of ongoing headache

---

[5] We express no opinion concerning whether 38 U.S.C. § 7113(c) may be a mandatory claims-processing rule that the Board may waive.

[6] According to VA, claimants are not barred from submitting written argument outside the evidentiary windows prescribed by section 7113. *See* VA Claims and Appeals Modernization, Final Rule, 84 Fed. Reg. 138, 156 (Jan. 18, 2019) ("Although the modernized review system confines evidence submission to certain periods, the statute and proposed regulations do not—apart from creating a faster review process—restrict . . . [the] ability to submit argument."); *id.* at 161 ("We do not believe that imposition of a time period for submission of argument would appreciably speed up the appellate process, and it could deprive the veteran of an opportunity to argue in favor of his or her claim.").

and sinus symptoms was credible. App. Br. at 10-11; Reply (Rep.) Br. at 4-5. "Evidence is defined as '[s]omething (including testimony, documents, and tangible objects) that tends to prove or disprove the existence of an alleged fact . . . .'" *Aviles-Rivera*, 35 Vet.App. at 277 (quoting BLACK'S LAW DICTIONARY (11th ed. 2019)). Because Mr. Cook asserts that his July 2019 lay statement is evidentiary in nature, we will not accept the Secretary's concession.[7]

In light of our holding that subsections 7113(c)(1) and 7113(c)(2)(A) together plainly and unambiguously exclude from the evidentiary record before the Board evidence submitted between the time the AOJ decision is issued and the time that the NOD is filed, we conclude that the Board properly did not consider evidence submitted between June 2019 rating decision and the October 2019 NOD, including Dr. Cesta's opinion submitted in September 2019 and Mr. Cook's lay statement submitted in July 2019.

### III. 38 U.S.C. § 7104(d)(2)

The second issue before us is whether the Board provided, in its decision, a general statement that complied with 38 U.S.C. § 7104(d)(2).

#### A. Parties' Arguments

Mr. Cook argues that the Board erred because its decision did not provide a general statement that complied with subsection 7104(d)(2). He initially argued that subsection 7104(d)(2) imposes a new procedural duty distinct from the Board's duty to provide adequate reasons or bases under 38 U.S.C. § 7104(d)(1). App. Memo at 18-20.[8] But at oral argument, Mr. Cook argued that the Board erred by providing inadequate reasons or bases under the traditional reasons-or-bases standard of review. O.A. at 24:42-:55, 01:10:02-:13. He also asserted that the Board's general statement should "give the veteran [clear] notice . . . telling the veteran what was and what was not considered." O.A. at 33:18-:45, 01:15:30-:43. Mr. Cook argues that the Board incorrectly stated that the evidence it did not consider was received after the 90th day following the NOD, and that the Board failed to inform Mr. Cook that it did not consider evidence received before the

---

[7] The Secretary also conceded at oral argument that the Board was not barred from considering Mr. Cook's sister's July 2019 lay statement. We will not accept this concession. Mr. Cook's sister's July 2019 lay statement is not at issue in this case. Mr. Cook did not argue in his briefs that the Board should have considered or addressed his sister's July 2019 statement.

[8] We asked the parties to file supplemental memoranda of law addressing whether subsection 7104(d)(2) affected the Court's reasons-or-bases standard of review.

NOD. App. Br. at 11-12, 19; App. Memo at 6, 14; O.A. at 14:51-15:05. And he argues that the Board's error was prejudicial because he and his counsel before the Agency "had no knowledge of what evidence to resubmit" with a supplemental claim to have VA consider any such evidence, and he was thereby prevented from effectively participating in the adjudicative process. *Id.* at 13; O.A. at 26:45-27:51.

In response, the Secretary argues that the Board complied with subsection 7104(d)(2) when it stated that it did not consider "'[e]vidence [that] was added to the claims file during a period when new evidence was not allowed'" and instructed Mr. Cook to file a supplemental claim if he wanted this evidence considered. Sec. Br. at 7 (quoting R. at 6); Sec. Memo at 2, 23. The Secretary argues that subsection 7104(d)(2) supplements the Board's reasons-or-bases requirement and is not a notice requirement, because subsection 7104(d)(2) is "next to" subsection 7104(d)(1). Sec. Memo at 20-21; O.A. at 42:42-:45, 54:29-:33. He argues that though the Board referred to evidence submitted after the 90 days following the NOD as evidence it did not consider, instead of evidence submitted before the NOD, the Board provided adequate reasons or bases because the reasons-or-bases standard does not require "perfection." Sec. Memo at 19-22; O.A. at 56:48-:52, 57:16-:39.

Alternatively, the Secretary concedes that the Board erred when it referred to evidence submitted after the 90 days following the NOD and not to evidence submitted before the NOD, but he argues that Mr. Cook fails to demonstrate that the error prejudiced him. Sec. Br. at 6-7; O.A. at 56:48-:52. The Secretary argues that Mr. Cook does not demonstrate "any confusion as to the evidence encompassed by the Board's generalized statement," and that it was not burdensome to Mr. Cook and his counsel to discover that the only possible untimely evidence in this case was Dr. Cesta's September 2019 opinion and the July 2019 lay statements. Sec. Memo at 22; O.A. at 37:51-41:04, 01:06:14-:08:27.

## B. Analysis

Again, we start our inquiry with the text of the statute to determine whether the language is plain and unambiguous. *See Robinson*, 519 U.S. at 340.

Section 7104(d), title 38, U.S. Code, states:

Each decision of the Board shall include–

> (1) a written statement of the Board's findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record;

11

(2) a general statement–

> (A) reflecting whether evidence was not considered in making the decision because the evidence was received at a time when not permitted under [38 U.S.C. § 7113]; and

> (B) noting such options as may be available for having the evidence considered by the Department; and

(3) an order granting appropriate relief or denying relief.

38 U.S.C. 7104(d).

To determine whether the Board complied with subsection 7104(d)(2), we must first determine the Court's standard of review. The Secretary asserts that the requirement for a general statement under subsection 7104(d)(2) supplements the Board's reasons-or-bases requirement under subsection 7104(d)(1), and both parties assert that the Court should apply to the general statement the same standard of review traditionally applied to the Board's statement of reasons or bases under subsection 7104(d)(1).

We note, as an initial matter, that subsection 7104(d) separates and indents subparts (d)(1) and (d)(2), connoting that Congress plainly intended for the Board's statement of reasons or bases and its general statement to be separate subparts of "[e]ach decision of the Board." *See Lary v. Trinity Physician Fin. & Ins. Servs*., 780 F.3d. 1101, 1105-06 (11th Cir. 2015) ("Ordinarily, the scope of a subpart is limited to that subpart.") (citing ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 156 (2012) ("Material within an indented subpart relates only to that subpart.")). The structure does not connote that the Board's general statement is a subpart of its statement of reasons or bases; therefore, contrary to the Secretary's argument, subsection 7104(d)'s structure alone does not suggest that Congress intended the Court to review the Board's general statement using the same standard applicable to the Board's reasons or bases.

First, although subsection 7104(d)(2) does not include the term "adequate," we hold that Congress obviously intended for the Board's decision to include an adequate general statement. *Koons Buick Pontiac GMC, Inc.* v. *Nigh*, 543 U.S. 50, 63 (2004) ("'[T]here is no canon against using common sense in construing laws as saying what they obviously mean.'" (quoting *Roschen v. Ward*, 279 U.S 337, 339 (1929))). "Adequate" means "legally sufficient," *Adequate*, BLACK'S LAW DICTIONARY (11th ed. 2019), and to read subsection 7104(d)(2) as requiring anything other

than an adequate general statement would render the provision ineffective. *See Splane v. West*, 216 F.3d 1058, 1068 (Fed. Cir. 2000) ("We must construe a statute, if at all possible, to give effect and meaning to all its terms."); *see also Clark v. Barnard*, 2 S. Ct. 878, 893-94 (1883) ("[I]f it does not mean this, it does not mean anything . . . . We must construe it, ut res magis valeat quam pereat . . . .").

Second, we note that, like subsection 7104(d)(2), subsection 7104(d)(1) does not include the term "adequate." Nevertheless, Congress chose to adopt the judicially imposed standard of adequacy traditionally applied to the Board's statement of reasons or bases under 7104(d)(1). "Congress ratifies a judicial interpretation in a reenacted statute only if two requirements are satisfied: (1) the interpretation must be so well settled that we can 'presume Congress knew of and endorsed it' at the time of the reenactment, and (2) the statute must be reenacted without material change." *Minerva Surgical, Inc. v. Hologic, Inc.*, 141 S. Ct. 2298, 2315 (2021) (citations omitted). When Congress enacted the AMA, Congress did not amend the language of subsection 7104(d)(1) in any way. Further, we presume that Congress knew of and endorsed the judicial interpretation of the standard of adequacy applicable to the Board's reasons or bases under subsection 7104(d)(1), because the interpretation had been well settled for nearly 3 decades. *See Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990) (interpreting 38 U.S.C. § 4004(d)(1) (1988)).[9]

While the Board's general statement and its statement of reasons or bases must both be adequate, to achieve adequacy the Board's general statement must meet conditions different from those applicable to the Board's statement of reasons or bases, because the requirements of subsection 7104(d)(2) are different from those of subsection 7104(d)(1). Congress understood that for the Board's reasons or bases to be adequate, the Board must "account for the evidence which it finds to be persuasive or unpersuasive" and its decision "must contain clear analysis and succinct but complete explanations." *Id.* at 57. Thus, to render an adequate statement of reasons or bases, the Board must consider evidence and explain its weighing of the probative value of evidence. By comparison, subsection 7104(d)(2)(A) requires something different: a general statement "reflecting whether evidence was not considered in making the decision because the evidence was received at a time when not permitted under [38 U.S.C. § 7113]." 38 U.S.C. § 7104(d)(2)(A). Thus, to provide a general statement, the Board must consider whether any evidence in the record in the

---

[9] In May 1991, Congress redesignated 38 U.S.C. § 4004(d)(1) as 38 U.S.C. § 7104(d)(1), and the language of subsection 7104(d)(1) has remained the same to this day.

proceeding falls outside the "evidentiary record before the Board" under section 7113. Unlike subsection 7104(d)(1), no language in subsection 7104(d)(2) suggests that the Board must actually consider any evidence or explain the probative value of any evidence.[10]

Third, we hold that Congress plainly intended that an adequate general statement under subsection 7104(d)(2) is one that *accurately informs* a claimant whether the Board did not consider evidence because it was received during a time not permitted by section 7113, and what options may be available for having VA consider that evidence. In the AMA system, a claimant has the option to have VA consider new and relevant evidence after receiving a Board decision, by filing a supplemental claim at any time, and if the claimant files a supplemental claim within 1 year of the Board decision, the claimant can preserve the effective date of the claim decided in that Board decision. *See* 38 U.S.C. §§ 5104C(b), 5108, 5110(a)(2)(D); *Military-Veterans Advocacy*, 7 F.4th at 1119. "New" evidence is "evidence not previously part of the actual record before agency adjudicators." 38 C.F.R. § 3.2501(a)(1) (2022). Thus, after receiving a Board decision, a claimant has the option to have VA consider evidence that was associated with the VA claims file but was not part of the evidentiary record before the Board under section 7113, and a claimant can exercise this option by filing a supplemental claim. *See* 38 U.S.C. § 5108.[11]

For a claimant to make an informed decision on whether and how to have VA consider any evidence not considered by the Board, the Board must accurately inform the claimant whether it did not consider evidence because it was received during a time not permitted by section 7113, and what options may be available for having VA consider that evidence. Congress obviously intended to require the Board to include, in its decision, a general statement that accurately informs the claimant of that information, because a general statement inaccurately informing the claimant

---

[10] "Decisions of the Board shall be based on the entire record in the proceeding and upon consideration of all evidence and material of record and applicable provisions of law and regulation." 38 U.S.C. § 7104(a). To the extent subsection 7104(a) might be read as suggesting that the Board's general statement must be based on "consideration" of any evidence, the language of subsection 7104(d)(2) (the provision more specific to the Board's general statement) and its cross-reference to section 7113 (which limits the evidence the Board shall "consider") makes clear that the Board is not required to "consider" any evidence for the purpose of providing, in its decision, a general statement under subsection 7104(d)(2). *See Nitro-Lift Techs., L.L.C. v. Howard*, 568 U.S. 17, 21 (2012) (explaining that where a specific statute conflicts with a general provision, "the specific governs the general"); *see generally Aviles-Rivera*, 35 Vet.App. at 278 ("[S]ections 7104 and 7113 work in concert and must be read harmoniously. Section 7104(a) does not proscribe the evidence and materials that are before the Board; instead, it indicates that the Board must consider everything that is properly in the record before it.").

[11] "For supplemental claims, potentially new evidence must be identified or included." 38 C.F.R. § 3.160 (2022).

14

of that information would render subsection 7104(d)(2) ineffective. *See Koons Buick Pontiac GMC, Inc.*, 543 U.S. at 63; *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371 (1988) ("A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law.").

We now turn to whether Mr. Cook has demonstrated that the Board provided an inadequate general statement under subsection 7104(d)(2). *See Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) (explaining that the appellant bears the burden of demonstrating error on appeal), *aff'd per curiam*, 232 F.3d 908 (Fed. Cir. 2000).

## B. Application to this Case

Mr. Cook has demonstrated that the Board provided an inadequate general statement. The Board stated: "Evidence was added to the claims file during a period when new evidence was not allowed–after the 90 days following the election of the Evidence appeal lane. As the Board is deciding the claims herein, it may not consider this evidence in its decision." R. at 6. The parties do not dispute that the Board did not consider evidence submitted during the time period between the AOJ decision and the NOD, and Board erred because it provided, in its decision, a misleadingly inaccurate general statement informing Mr. Cook that it did not consider only evidence received after the 90 days following NOD.

We also conclude that the Board's error prejudiced Mr. Cook. "[P]rejudice is established by demonstrating a disruption of the essential fairness of the adjudication, which can be shown by demonstrating that the error (1) prevented the claimant from effectively participating in the adjudicative process, or (2) affected or could have affected the outcome of the determination." *Simmons v. Wilkie*, 30 Vet.App. 267, 279 (2018), *aff'd*, 964 F.3d 1381 (Fed. Cir. 2020). The Secretary insists that Mr. Cook could have easily guessed that the only possible untimely evidence in this case was Dr. Cesta's opinion and the July 2019 lay statements. This argument is unavailing. Generally it is the appellant who bears the burden of demonstrating prejudice. *Id.* at 280. And here, Mr. Cook has demonstrated that because the Board's general statement misled him as to the evidence it did not consider, he was prevented from making an informed decision on whether and how to have VA consider any evidence not considered by the Board.[12] Thus, as Mr. Cook asserts,

---

[12] We note that Mr. Cook conceded that on receipt of the Board decision, he obtained actual knowledge that

15

the Board's error prevented him from effectively participating in the adjudicative process. *See id.* at 281-82 ("When an error . . . deprives a claimant of a meaningful opportunity to participate in the processing of their claim, the error has the 'natural effect' of being prejudicial.").

Accordingly, the Court will set aside the Board's decision and remand the matter for the Board to include in its decision an adequate general statement as required by subsection 7104(d)(2). *See Tucker v. West*, 11 Vet.App. 369, 374 (1998) (remand is appropriate "where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate").

## IV. OTHER CONSIDERATIONS

At this time, the Court need not address Mr. Cook's remaining arguments. *See Best v. Principi*, 15 Vet.App. 18, 20 (2001) (per curiam order). The Court reminds the Board that "[a] remand is meant to entail a critical examination of the justification for the [Board's] decision." *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991); *see also Andrews v. McDonough*, 34 Vet.App. 151, 161 (2021). And the Board must treat this matter in an expeditious manner on remand from the Court in accordance with 38 U.S.C. § 7112.

## V. CONCLUSION

After consideration of the parties' briefs and supplemental memoranda of law, oral argument, the record on appeal, and the governing law, the Court SETS ASIDE the June 3, 2020, Board decision and REMANDS the matter for further proceedings consistent with this decision.

JAQUITH, *Judge*, concurring:

I agree with my distinguished colleagues that the Board failed to fulfill its obligation under section 7104(d)(2) to include in its decision "a general statement . . . reflecting whether evidence was not considered in making the decision because the evidence was received at a time when not permitted" and noting the options for having the evidence considered, necessitating that the June 2020 Board decision be set aside and the matter remanded for further proceedings, because the

---

the Board did not consider evidence submitted in September 2019. *See* Rep. Br. at 7; App. Memo at 21. But this concession is not fatal to his appeal, because Mr. Cook does not assert that he understood that the Board did not consider any evidence submitted between the AOJ decision and the NOD, including his July 2019 lay statement.

16

Board's statement was inaccurate and misleading, and thus inadequate. I write separately to highlight that VA's notice failure is not limited to the Board's failure to adequately state what it did not consider but began with VA's failure to provide the veteran notice of what evidence VA would not consider, and that VA's notice failures deprived Mr. Cook of his right to fair process.

The Due Process Clause of the Fifth Amendment of the United States Constitution requires that when a veteran is to be deprived of his or her property interest in benefits as a result of Federal Government action, the veteran must be provided with notice and an opportunity to be heard. *Thurber v. Brown*, 5 Vet.App. 119, 122 (1993); *Cushman v. Shinseki*, 576 F.3d 1290, 1298 (Fed. Cir. 2009). Beyond their constitutional rights, veterans "have a right to fair process in the development and adjudication of their claims and appeals before VA." *Bryant v. Wilkie*, 33 Vet.App. 43, 46 (2020). Even "where no particular procedural process is required by statute or regulation, the principle of fair process may nonetheless require additional process if it is implicitly required when 'viewed against [the] underlying concepts of procedural regularity and basic fair play' of the VA benefits adjudicatory system." *Smith v. Wilkie*, 32 Vet.App. 332, 337 (2020) (quoting *Thurber*, 5 Vet.App. at 123). Moreover, "the principle of fair process applies throughout the process of evidentiary development," and requires notice and an opportunity to respond. *Id.* at 337-38; *see Thurber*, 5 Vet.App. at 123 ("The entire thrust of the VA's nonadversarial claims system is predicated upon a structure which provides for notice and an opportunity to be heard at virtually every step in the process.").[13]

In this case, on June 25, 2019, the AOJ denied service connection for sinusitis, headaches, and diabetes; granted service connection for allergic rhinitis with a 0% disability rating, R. at 259-63; and then notified Mr. Cook of that decision 3 days later. R. at 249-58. The AOJ's notice letter and enclosures addressed the steps Mr. Cook should take if he disagreed with the AOJ's decision. R. at 250-51, 255, 257-58. The notice told Mr. Cook how to respond to VA with evidence to

---

[13] VA has statutory obligations to provide notice of any information and evidence VA has not received that is necessary to substantiate a claim, 38 U.S.C. § 5103(a)(1); to indicate in such notice which portion of that information and evidence is to be provided by the claimant and which portion the Secretary will attempt to obtain on behalf of the claimant, in accordance with 38 U.S.C. § 5103A, *id.*; and to provide notice regarding the evidence considered by VA in deciding the veteran's claim, 38 U.S.C. § 5104(b)(2). The veteran has a right to submit evidence to the Board during a period of 90 days unless that right is waived, 38 C.F.R. § 20.300(b) (2022). If the appellant requests an opportunity to submit additional evidence, the Board decision is based on evidence of record at the time of the AOJ's decision and evidence submitted by the appellant with the NOD or within 90 days following receipt of the NOD. 38 C.F.R. § 20.303 (2022). Under 38 U.S.C. § 7104(d)(1), the Board decision must account for potentially favorable material evidence. *See, e.g.*, *Arline v. McDonough*, 34 Vet.App. 238, 257 (2021).

support his claim—suggesting uploading correspondence as the fastest way, but also providing the address to mail correspondence and a toll-free fax number to transmit correspondence. R. at 255. Within a month, the veteran's representative responded by faxing certified statements by the veteran and his sister to the number VA provided for disability compensation claims.[14] R. at 227-32. Six weeks later, the veteran's representative faxed VA a medical evaluation report by a private physician board certified in internal medicine and psychiatry. R. at 211-26. The private physician opined that Mr. Cook suffered from service-connected post-traumatic stress disorder (PTSD) that was 100% disabling, as well as service-connected rhinitis, sinusitis, headaches, and diabetes mellitus type II. *Id.*

The AOJ's June 2019 notice letter and enclosures also said that if the veteran disagreed with the AOJ's rating decision, he had 1 year to select a review option by filing a request on the required application form for the review option he chose. R. at 250, 257-58. The notice letter mentioned only one time limit, the 1 year to request review; there was nary a word in the notice letter or its enclosures indicating that there was any other time limit for submitting evidence, much less the specified, limited timeframe beginning with receipt of his NOD and extending 90 days after that. The AOJ not only failed to mention it would not consider evidence submitted after its decision on the veteran's claim, *see* 38 C.F.R. § 3.103(c)(2) (2022), its notice letter describing how to submit such evidence suggested otherwise and there is no indication that VA ever told the veteran that the evidence he submitted was too late for the AOJ to consider it and too early for the Board to consider it.

In October 2019, Mr. Cook appealed to the Board using VA Form 10182 and chose the "Evidence Submission Reviewed by a Veterans Law Judge" option. R. at 200. The form provided that opting for the evidence submission docket meant that the veteran was saying: "I have additional evidence in support of my appeal that I will provide within the next 90 days." *Id.* The form said nothing to warn the veteran that evidence he had already submitted would not be considered or would be considered only if it had already been considered by the AOJ. And the

---

[14] The veteran described undergoing in-service treatment for allergies, headaches, and sinusitis while he was stationed in Okinawa, and experiencing sinus flare-ups and debilitating headache attacks since then. R. at 227. The veteran also said that he worked as a munitions specialist in Okinawa, and "while [he was] moving a 500lb bomb, it fell from the forks of the forklift and hit the ground" and "began smoking." *Id.* Mr. Cook said he froze from fear and that moment had affected him ever since. *Id.* He said: "I feel that I developed diabetes as a result of my PTSD." *Id.* Mr. Cook's sister said that when he returned home from the Air Force, he drank a lot and became an alcoholic and "kind of a hermit." R. at 231.

form said nothing about the new rule in section 7113(c)(2) limiting the evidence the Board may consider to evidence considered by the AOJ, evidence submitted with the veteran's NOD, and evidence submitted within 90 days following receipt of the NOD. These omissions suggest to veterans that evidence they previously submitted will be considered.

The Board initially responded to Mr. Cook's appeal by confirming that his appeal had been placed on the evidence submission docket and detailing the process going forward, including advising him: "You have 90 days from the date of the Board's receipt of your Board Appeal (VA Form 10182) to submit new evidence." R. at 197-98. In its response the Board said nothing to indicate that evidence already submitted would not be considered.

In *Aviles-Rivera,* the Court determined that the AMA's evidentiary record restriction does not violate fair process. *Aviles-Rivera v. McDonough*, 35 Vet.App. 268, 279 (2022). But the veteran in that case had chosen higher-level review and then the direct review docket, so he had notice that the review would be limited to the evidentiary record before the AOJ at the time of its decision. *Id.* at 275-77. In contrast, Mr. Cook opted for "evidence submission reviewed by a Veterans Law Judge," R. at 200, twice submitted favorable evidence for appellate review, R. at 211-26, 227-32, and received no notice—from the AOJ or the Board, before the Board issued the decision on appeal—that the favorable evidence would not or could not be considered.

Context matters. So the complete story of VA's notice failure here began when the Agency failed to tell the veteran that the evidence he submitted in response to the AOJ's notice of its rating decision would not be considered unless he resubmitted the evidence with his NOD. And that notice failure continued with the Board's inaccurate and misleading statement that "[e]vidence was added to the claims file during a period when new evidence was not allowed—after the 90 days following the election of the Evidence appeal lane." R. at 6. To me, the thoughtlessness that left the VA form and letter suggesting that the veteran needed to submit only new, additional evidence in the next 90 days, was compounded by the carelessly false statement that what wasn't considered was tardy because it was submitted after the 90-day window.[15]

As the Court's opinion reflects, whatever other attributes are essential for the Board's general statement to be adequate, the first and foremost one is that the statement be accurate. And,

---

[15] Recall that the evidence the Board refused to consider was submitted in July 2019 (the lay statements) and September 2019 (the medical opinion). So this evidence was submitted early—apparently in response to the AOJ's June 2019 notice but *before* the veteran's October 2019 NOD starting his 90-day window under 38 C.F.R. § 20.303(b)(1) (and thus long before the 90-day window closed).

though sections 7104(d)(1) and (2) prescribed different measures of adequacy, the general statement required by section 7104(d)(2) must enable the veteran to understand whether and why the Board did not consider evidence and permit effective judicial review. *See Gilbert v Derwinski*, 1 Vet.App. 49, 56-57 (1990). Both subsections of section 7104(d) are decisional requirements that provide notice. The general statement notifies the veteran "whether evidence was not considered in making the decision because the evidence was received at a time when not permitted" and notifies the veteran of his or her options for having the evidence considered. 38 U.S.C. § 7104(d)(2). Section 7104(d)(2) parallels sibling section 7104(d)(1), which notifies the veteran of the reasons or bases for the Board's findings and conclusions. *See* 38 U.S.C. § 7104(d)(1). "Notify" means, after all, "to inform (a person or group) in writing." *Notify*, BLACK'S LAW DICTIONARY 1280 (11th ed. 2019).

Congress made clear that it considered the new section 7104(d)(2) to require notice. The House committee report stated that the AMA would "[e]stablish that the Board shall provide written notice to the appellant if the Board does not review evidence that the veteran did not submit timely; such written notice must include an explanation of options that may be available for having the evidence considered by VA." H. R. REP. NO. 115-135, at 9 (2017); *id.* at 2 ("VBA [Veterans Benefits Administration] and the Board would be required to notify the veteran if VA does not consider evidence that the veteran did not file timely. Such notice would also detail any options that may be available to the claimant for having VA consider such evidence."). The Senate agreed, saying, when discussing subsection 7104(d)(2), that it "intends and expects that VA . . . will ensure that appellants are made fully aware of what actions they would need to take to have [untimely] evidence considered by VA adjudicators." S. REP. NO. 115-126, at 13 (2017). And VA did, too, before this litigation, explaining that subsection 7104(d)(2) is a "statutory direction to provide notice in the Board decision." VA Claims and Appeals Modernization, Final Rule, 84 Fed. Reg. 138, 156 (Jan. 18, 2019).

Notice and a meaningful opportunity to respond are key requirements of due process and the fair process principles at the heart of our system. The notice the AOJ and the Board provided here was inadequate, first giving the veteran no reason to think that the early evidence he submitted in response to the AOJ's notice would not be considered unless it was resubmitted and then giving him an inaccurate and misleading general statement regarding the evidence the Board had not considered. VA's handling of this case did not measure up to the expectation of Congress, for the

Senate Committee "stresse[d] that limiting the windows for submitting evidence [wa]s in no way meant to alter the veteran-friendly nature of the VA claims and appeals process," and expected that VA would "ensure that appellants are made fully aware of what actions they would need to take to have [their] evidence considered by VA adjudicators. Veterans Appeals Improvement and Modernization Act of 2017, S. REP. NO. 115-126 (July 10, 2017). And encouraging a veteran to submit evidence that VA will not consider, failing to give notice of the boundaries of the evidentiary window, and providing an inaccurate statement regarding what the Board did not consider deprives the veteran of fair process.[16]

Given the Board's references to the veteran's contentions, it is not clear whether the Board considered his July 2019 statement notwithstanding its submission outside the prescribed evidentiary window. And the Board's careful phrasing in saying that the June 2019 VA examiner's negative nexus opinions were unrebutted—"[t]here are no competing medical opinions *associated with the claims file during an applicable evidence period*," R. at 8 (emphasis added)—suggests that the Board was aware of the private physician's contrary opinions. In light of the misleading notice VA gave the veteran regarding getting evidence considered, the Board should not have ignored evidence it knows it has and knows contains important information favorable to the veteran. The Court's remand affords the Board an opportunity to ensure that the veteran receives proper notice and a meaningful opportunity to have his favorable evidence considered.

---

[16] When VA deprives a veteran of fair process, the Court need not reach the constitutional due process question. *Smith*, 32 Vet.App. at 337.